## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

EVELYN RIVERA,

      Plaintiff,

      v.                                   Civil No. 12-1479 (BJM)

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

## OPINION AND ORDER

Plaintiff Evelyn Rivera ("Rivera") seeks judicial review of the decision of the defendant, the Commissioner of Social Security ("Commissioner"), finding that she is not entitled to disability benefits under the provisions of the Social Security Act (the "Act"), 42 U.S.C § 423, as amended. (Docket No. 1). Rivera asks for judgment to be reversed or in the alternative to remand the case to the Commissioner for further proceedings. Rivera filed a memorandum of law in support of her position. (Docket No. 20). The Commissioner answered the complaint (Docket No. 12) and filed a memorandum in support of the decision. (Docket No. 23). This case is before me on consent of the parties. (Docket No. 5, 7). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## LEGAL STANDARD

The court's review is limited to determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                             Page 2

findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are

not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Ortiz v. Secretary of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Da Rosa v. Secretary of Health and Human Servs.,

803 F.2d 24, 26 (1st Cir. 1986).  The court "must affirm the [Commissioner's] resolution, even if

the record arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Secretary of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is unable to engage in any

substantial gainful activity when she "is not only unable to do [her] previous work but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."[1]  42 U.S.C. § 423(d)(2)(A).  In determining

whether a claimant is disabled, all of the evidence in the record must be considered.  20 C.F.R. §

404.1520(a)(3).

A five-step sequential evaluation process must be applied to every case in making a final

determination as to whether a claimant is disabled.  20 C.F.R. § 404.1520; see Bowen v. Yuckert,

482 U.S. 137, 140-42 (1987); Goodermote v. Secretary of Health and Human Servs., 690  F.2d 5,

6-7 (1st Cir. 1982).  In step one, the ALJ determines whether the claimant is engaged in "substantial

---

[1]The phrase "work which exists in the national economy" means "work which exists in
significant numbers either in the region where such individual lives or in several regions of the country."
42 U.S.C. § 423 (d)(2)(A).

gainful activity." If she is, disability benefits are denied. 20 C.F.R. § 404.1520(b). If she is not, the

ALJ proceeds to step two, through which it is determined whether the claimant has a medically

severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does

not have a severe impairment or combination of impairments, the disability claim is denied.

However, if the impairment or combination of impairments is severe, the evaluation proceeds to the

third step, in which it is determined whether the claimant has an impairment equivalent to a specific

list of impairments contained in the regulations' Appendix 1, which the Commissioner

acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20

C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled. If the impairment is not one that is

conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the

ALJ assesses the claimant's residual functional capacity[2] ("RFC") and determines whether the

impairments prevent the claimant from the work she has performed in the past. If the claimant is

able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined

that the claimant cannot perform this work, then the fifth and final step of the process calls for a

determination of whether the claimant is able to perform other work in the national economy in view

of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is

entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that she is disabled within the meaning of the Act.

See Bowen, 482 U.S. at 146-147, n.5. The claimant must prove under steps one through four that

she cannot return to her former employment because of the alleged disability. Manso-Pizarro, 76

---

[2] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

F.3d at 17;  Santiago v. Sec'y of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Once a

claimant has demonstrated a severe impairment that prohibits return to her previous employment,

the Commissioner has the burden, under step five, to prove the existence of other jobs in the national

economy that the claimant can perform.  Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520,

524 (1st Cir. 1989).    Additionally, to be eligible for disability benefits, the claimant must

demonstrate that her disability existed prior to the expiration of her insured status, or her date last

insured.  Cruz Rivera v. Sec'y of Health and Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### FACTUAL AND PROCEDURAL BACKGROUND

Rivera was born November 5, 1960.  She has a high school education (GED) and has worked

as a cashier, janitor, and sewing machine operator before allegedly becoming unable to work due to

major depressive disorder with psychotic features, osteoarthritis, hypertension, and acute back pain.

Rivera claims to have been disabled since July 1, 2007 (alleged onset date), and last met the Social

Security Administration's ("SSA") insured status requirements on March 31, 2009 (date last

insured).  She did not engage in substantial gainful activity during this period.   (Transcript ["Tr."]

14, 17-18, 338, 345, 348, 354, 357, 360).

Rivera visited the Pepino Health Group, Inc. *Centro de Diagnóstico y Tratamiento* ("CDT")

on various occasions between April 3, 2006 to December 7, 2008.[3]  (Tr. 109-121, 158-161, 421-428,

462-463).  On January 13, June 10 and December 2, 2007, she was treated for high blood pressure

and anxiety.  (Tr. 112-113, 115, 117).  On December 2, 2007, Rivera was also treated for depression

and cramping in her right leg.  Her leg examination came back normal.  (Tr. 112-113).  On August

20, 2008, she was treated for lower back pain.  (Tr. 161).

---

[3] Not all the visits to this health center were related to the alleged disabling conditions.  One visit
was due to a bee sting, another to sinus pain.

From December 12, 2006 to June 18, 2007, Rivera received treatment through the State Insurance Fund ("SIF").  (Tr. 84-107, 408-419).  On December 12, 2006, a radiology exam revealed that the spine was normal except for fused C4-C5 vertebral bodies, and her right elbow was normal with no acute fracture, dislocation, or pathology. (Tr. 104).  Progress notes dated June 18, 2007 state that Rivera suffered from back pain and right elbow epicondylitis, but with no limitation of movement, and that additional treatment would serve as support.  Rivera was "[d]ischarged without disability."  (Tr. 85).

 Rivera first received psychological treatment for major depressive disorder at the *Centro de Salud Conductual del Oeste*, from July 2 to August 31, 2007.  (Tr. 352).  She was then treated from April 8, 2006 to March 10, 2009 for panic attacks, depression, and anxiety at the *Administración de Servicios de Salud Mental y Contra la Adicción*'s ("ASSMCA") Mental Health Center of Moca. Rivera was diagnosed with moderate recurrent major depressive disorder with psychotic features and generalized anxiety disorder.  Undated mental health exams show that, although depressed and anxious, her behavior, thought process and content, judgment, attention and concentration were adequate.  She was oriented, and had no suicidal or homicidal thoughts.  (Tr. 174-219, 513-535).

After a suicidal attempt due to a depressive crisis (Tr. 124), Rivera was referred to Dr. Abraham Beauchamp, clinical psychologist, who treated her from July 12, 2007 to March 19, 2009. The record contains a psychological report signed May 8, 2008, and psychiatric evaluation and a mental RFC assessment,[4] both dated December 30, 2008.  According to this medical record, the first signs of illness emerged July 2005.  Her chronic physical pain limited her ability to work, which depressed her progressively.  She felt sad, melancholic, isolated, discouraged, tired, irritable,

---

[4] Although the date on the last page of the mental RFC assessment (next to the signature) is December 30, 2007, the first page states that the assessment is for the time period between July 12, 2007 to December 30, 2008.  (Tr. 133, 138).

anxious, and stressed.  She had suicidal and homicidal thoughts, a history of suicidal attempts, a family history of mental illness, and suffered from hallucinations (auditory, visual, and tactile), somatizations, panic attacks, and insomnia.  Dr. Beauchamp found that Rivera was oriented in person, but not in place or time.  Her memory was impaired, she had poor judgment, was impulsive under pressure, did not tolerate stressful situations, and required supervision when in public and to make decisions.  Dr. Beauchamp diagnosed Rivera with major depressive disorder, recurrent, severe with psychotic behavior, and treated her with outpatient psychotherapy, rational emotive psychotherapy, and medications for her high blood pressure and chronic physical pain.  Dr. Beauchamp assessed that Rivera did not have the ability to work, finding that her ability to understand and remember procedures and detailed instructions, sustain concentration and persistence, interact socially, and adapt to work settings was extremely limited.  Dr. Beauchamp also found Rivera to be markedly limited in her ability to understand, remember, and carry out very short and simple instructions. (Tr. 123-132, 133-137, 142-146, 163-164, 351, 430-434, 435-439, 443-447, 465-466).

Dr. Rafael De Jesus, general practitioner, treated Rivera with medications for osteoarthritis and high blood pressure from January 17, 2008 to April 28, 2009, and prepared a cervical RFC assessment on May 5, 2009.  Dr. De Jesus reported that Rivera's symptoms included headaches, tenderness, muscle spasm and weakness, chronic fatigue, spastic gait, and reduced grip strength.  He found she was significantly limited in the cervical range of motion, had constant moderate to severe pain associated with impairment of the cervical spine, and that psychological conditions such as depression and anxiety affected her physical conditions.  She could sit, stand, and walk for less than two hours in an eight-hour work day, and rarely or never lift and carry less than ten pounds, twist,

stoop, crouch, or climb.  Dr. De Jesus assessed that Rivera was completely disabled to work.

Progress notes for this treating source were not available in the case record.  (Tr. 21, 166-170, 351,

468-472).

The record also contains a medical report by Dr. Erick Nieves-Rivera, dated April 28, 2008,

that states that Rivera suffers from major depression, but the doctor's handwriting is illegible.  (Tr.

139-141, 440-442).  Rivera reported that Dr. Nieves treated her with medications from September

21, 1998 to November 1, 2006 for osteorthritis, major depressive disorder, and high blood pressure.

(Tr. 351).

There are two consultative evaluations on record, by Dr. Samuel Mendez and Dr. Bernardo

Muniz.[5]  Dr. Samuel Mendez, neurologist, evaluated Rivera and prepared a neurological consultative

report, dated August 8, 2008.  Her main complaint was that she suffered from lower back pain since

2000, which gradually spread to the rest of her body.  Dr. Mendez found Rivera to be alert, oriented

fully, and cooperative with adequate memory.  He found no agnosia, aphasia or apraxia.  The

neurological evaluation had mostly normal results, except for tender cervical and lumbar paraspinal

muscles, decreased strength of 4/5 symmetrically in all extremities, and mildly decreased

proprioception in the hands.  Even so, he found that Rivera's hand functions were normal, except

for some joint tenderness.  Dr. Mendez diagnosed chronic lumbalgia and cervicalgia, bilateral carpal

tunnel syndrome, and diffuse arthralgia with no sign of inflammatory changes.  (Tr. 147-154, 448-

455).  Dr. Mendez referred Rivera for a roentgenological consultation, and Dr. Ana Suarez-Lozada's

---

[5] These consultative reports were prepared prior to the date of the application in the instant case
because Rivera had previously filed for disability benefits on March 31, 2008, but requested withdrawal
of that application on December 22, 2008.  Approval was granted on January 14, 2009, deeming that
application as never filed.  Nonetheless, although counsel requested that these reports submitted under
the prior application be excluded from these proceedings, the ALJ in this case considered this evidence in
the final decision.  (Tr. 14-15, 339, 389-390).

report, also dated August 8, 2008, states that Rivera has fused C4/C5 vertebrae with mild cervical spondylosis and mild diffuse thoracolumbar spondylosis. (Tr. 155-156, 456).

Dr. Bernardo Muñiz, psychiatrist, evaluated Rivera on August 14, 2008, and found that she was alert and cooperative, and oriented in person, place, situation, and time.  Her psychomotor activity and movement were normal.  Although moderately depressed, she had appropriate speech, a normal thought process, and intact cognitive capacities.  The diagnostic impression was of major depression recurrent severe with psychotic features.  (Tr. 457-460).

On February 26, 2009, Rivera applied for a period of disability and disability insurance benefits. (Tr. 338-344).  Two disability reports and a work history report summarizing her personal information, alleged conditions, and work background were filed on March 24, 2009.  (Tr. 347-369).  On another disability report filed on December 23, 2009, Rivera informed that she had suffered no new changes in her existing conditions or limitations since the last report was filed.  (Tr. 403-407).  A function report, filed on April 16, 2009, contains her allegations as to how her conditions affected her daily activities.  Her conditions caused a lot of pain in her arms, back, and legs, and affected her ability to lift, squat bend, stand, reach, walk, sit, kneel, and climb stairs.  She felt depressed and had problems understanding, concentrating, following instructions, completing tasks, and remembering.  She felt fear, anxiety and panic when alone or outside of her house, and had negative thoughts.  However, in spite of her conditions, she reported being able to hold objects that weighed no more than five pounds and to walk for ten minutes with a rest period of twenty minutes.  She was able to prepare meals daily, wash the dishes, do laundry, drive short distances, go shopping, and handle money.  She liked spending time with others, by phone or in person, and got along well with authority figures, although she did not like to participate in social activities.  (Tr. 65-72, 370-377).

As requested by the Disability Determination Services ("DDS"), various state agency physicians submitted their medical advice in the form of mental and physical RFC assessments. (Tr. 473-474, 495, 497, 507-508, 558-559). On June 1, 2009, Dr. Jesus Soto-Espinosa, psychiatrist, assessed that the evidence in file suggested that Rivera had a moderate, major depressive disorder, which made her easily distracted and diminished her intellectual capacity. Her condition mildly limited her daily activities, and moderately limited her social functioning and ability to maintain concentration, persistence or pace. Dr. Soto assessed that Rivera had the mental RFC to learn, understand, remember and carry out simple and detailed work instructions, maintain attention and concentration for two-hour periods without undue interruptions, perform as per schedule and routine, appropriately interact with supervisors and coworkers, and adequately complete a normal workweek and workday. (Tr. 475-493). On July 2, 2009, Dr. Osvaldo Rivera, internist, assessed that Rivera's ability to stand and/or walk was limited to six hours. (Tr. 496). On July 8, 2009, Dr. Acisclo Marxuach, internist, assessed that Rivera had the physical RFC to occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for about six hours in an eight hour workday, could push and/or pull unlimitedly. She could climb, balance, and kneel frequently, and stoop, crouch, and crawl occasionally. Dr. Marxuach assessed that she had no manipulative, visual, communicative, and environmental limitations. (Tr. 498-506). Dr. Roque Stella, psychiatrist, assessed on July 13, 2009 that the evidence on file supports the mental RFC assessment provided by Dr. Soto. (Tr. 509). The SSA Regional Commissioner determined on July 9, 2009 that Rivera was not qualified to receive disability benefits in accordance with the Act, and that the evidence in the case showed that she could perform light work. (Tr. 56-59, 255, 260-263).

On August 27, 2009, Rivera requested reconsideration of the Regional Commissioner's decision denying benefits. (Tr. 256). Rivera claimed on a disability report filed on appeal on

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                                    Page 10

September 10, 2009 that she had no new illnesses or conditions since the last disability report was

filed, but that her conditions had worsened and resulted in new physical and mental limitations in

her daily activities.  (Tr. 381-388).  Another function report filed on September 24, 2009 contains

essentially the same allegations found in the original function report filed. (Tr. 76-83, 392-399).  On

November 6, 2009, the DDS requested additional medical advice.  (Tr. 558-559).  On November 9,

2009, Dr. Luis Rodriguez, psychiatrist, adopted the previous mental RFC assessment.  (Tr. 560).

On November 16, 2009, Dr. Vicente Sanchez, internist, adopted the previous physical RFC

assessment, finding that the evidence at the reconsideration level did not support a significant

worsening of her conditions.  (Tr. 564).  On November 19, 2009, Rivera's request for reconsideration

was denied.  (Tr. 60-62, 256, 265-267).

        Rivera requested a hearing by an ALJ on December 18, 2009.  (Tr. 271-279).  A hearing was

held on June 1, 2010, and a vocational expert ("VE") testified.  The ALJ asked the VE if a person

with the same work experience, age, and academic vocational profile as Rivera, whose maximum

exertional level is light and maximum mental capability is engaging in simple repetitive tasks, with

no contact with public and occasional contact with supervisors and co-workers could perform

Rivera's previous work.  The VE answered that such a person could perform the sewing machine

operator position, and other unskilled jobs that required light exertion, such as checker, and shipping

or receiving weigher.  Counsel then added other physical limitations to the ALJ's hypothetical, that

is, a person with less than frequent use of the hands, that needs at least four unscheduled 30 minute

breaks per week, and cannot lift and carry even 10 pounds occasionally.  The VE answered that such

a person would not be able to work in the unskilled occupations that he previously mentioned to the

ALJ or in any full-time job in a consistent basis, but that there are unskilled sedentary occupations,

such as surveillance system manager and preparer.  Counsel then asked the VE if a person who is

markedly to extremely limited in understanding, remembering, and sustaining concentration and

persistence, extremely limited in social interaction and adaption, and who cannot tolerate any kind

of criticism from supervisor would be able to perform any job.  The VE answered that such a person

would not be able to work any full-time job on a consistent basis.  (Tr. 32-52).

The ALJ issued a written decision on July 2, 2010, finding that Rivera was not disabled.  (Tr.

8-26).  The ALJ found that, through the date last insured, Rivera suffered from these severe

impairments (step two): mild cervical spondylosis (fusion at the C4/C5 level), thorocolumbar

spondylosis, bilateral Carpal Tunnel Syndrome, and severe recurrent major depression with

psychotic features.  The ALJ did not find that Rivera suffered from an impairment or combination

of impairments that met or equaled one of the listed impairments contained in the regulations (step

three).  (Tr. 18).  The ALJ found that Rivera had the RFC perform unskilled[6] light[7] work, but is

limited by her non-exertional mental limitations to simple repetitive tasks, no contact with the public,

and occasional contact with supervisors and co-workers.  (Tr. 20, 24). The ALJ found that Rivera

was capable of performing past relevant work as a sewing machine operator (step four) and, in the

alternative, other work in the national economy (step five).  The ALJ concluded that Rivera was not

---

[6]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength. ... A person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

[7]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such a loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                                                    Page 12

disabled under Sections 216(i) and 223(d) of the Social Security Act  at any time during the alleged

onset date through the date last insured.  (Tr.  24-26).

On August 17, 2010, Rivera requested review of the ALJ's decision. (Tr. 6-7).  On April 17,

2012, the Appeals Council denied her request. (Tr. 1-5).  Rivera appealed the ALJ's decision as the

Commissioner's final decision.

## DISCUSSION

The analysis in this case centers on the ALJ's determination at step four in the sequential

evaluation process that Rivera was able to perform past relevant work.  The ALJ also made an

alternative step five finding that there was work in the national economy that Rivera could perform.

In general, Rivera claims that the ALJ (1) did not apply the correct legal standards because the ALJ

posed a hypothetical question to the VE that did not include all of her physical and mental

limitations, specifically those reported by Dr. Beauchamp, the treating psychologist, and (2) did not

develop and explain fully in the disability decision a step four function-by-function analysis and

comparison as required by Social Security Ruling ("SSR") 82-61 and SSR 82-62.  (Docket No. 20).

The Commissioner argues that there is substantial evidence in the record to support a finding of not

disabled, and requests that the decision be affirmed.  (Docket No. 23).

On review, this court must determine whether the ALJ's decision was supported by

substantial evidence.  SSR 82-62 states that, in finding that an individual has the capacity to perform

a past relevant job, the determination or decision must contain specific findings of fact as to: (1) the

individual's physical and mental RFC, (2) the physical and mental demands of the past

job/occupation, and (3) whether the individual's RFC would permit a return to his or her past job

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                                Page 13

or occupation.  SSR 82-62, 1982 SSR LEXIS 27 at 10.  I examine the ALJ's findings as to each of

these matters in turn.

## I.       Physical and Mental RFC/Weight of the Medical Evidence

       Rivera argues that the ALJ did not consider findings by her treating physicians, Dr.

Beauchamp and Dr. De Jesus, in determining that she was not disabled.  The following general

concepts apply when analyzing whether an ALJ considered evidence in the record in determining

disability.  It is the Commissioner's responsibility to determine issues of credibility, draw inferences

from the record evidence, and resolve conflicts in the evidence.  Ortiz, 955 F.2d at 769 (citation

omitted); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)

(citations omitted).  Controlling weight must be given to a medical treating source's opinion if it is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the case record.  20 C.F.R. § 404.1527(d)(2); SSR 96-

2p.  The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence

or is inconsistent with other evidence in the record.  Id.; Arias v. Comm'r Soc. Sec'y, 70 F. App'x

595, 598 (1st Cir. 2003). Written reports submitted by non-examining physicians who merely

reviewed the medical evidence are not substantial evidence, but may serve as supplementary

evidence for the ALJ to consider in conjunction with the examining physician's reports.  Irizarry-

Sanchez v. Comm'r of Soc. Sec., 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

       ***Physical RFC/Dr. De Jesus***

       As to Dr. De Jesus, Rivera briefly mentions that the ALJ did not consider her manipulative

limitation and other limitations that would  interfere with her ability to be productive.  (Docket No.

20, p. 8).  The ALJ found that Rivera suffered from mild cervical spondylosis, thorocolumbar

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                                 Page 14

spondylosis, and bilateral carpal tunnel syndrome, that these impairments were severe and imposed

more than a slight limitation in her ability to perform basic work activities, but that she still had the

RFC to perform light work in spite of her physical conditions.  (Tr. 18, 20).  The record contains a

cervical RFC assessment form prepared by Dr. De Jesus, in which he assessed that Rivera could sit,

stand, and walk for less than two hours in an eight hour work day, rarely or never being able to lift

and carry less than ten pounds.  Dr. De Jesus's opinion, that Rivera was completely disabled to work,

did not receive controlling weight.  Importantly, the portions of an RFC assessment by a treating

physician that address capability to perform work are not entitled to significant weight because that

issue is reserved to the Commissioner.  *See* Collins v. Astrue, 324 Fed. Appx. 516, 520 (7th Cir.

2009).  Also, his treatment notes are not available, and the only other evidence of treatment for

physical conditions is the medical record from the Pepino Health Group CDT, where Rivera received

sporadic outpatient treatment for various medical conditions.  Although an absence of clinical notes

supporting a treating source's opinion does not justify an ALJ's rejection of that opinion,  Soto-

Cedeno v. Astrue, 380 Fed. Appx. 1, 2-3 (1st Cir. 2010), the ALJ did note that Rivera's conditions

were controlled with occasional outpatient treatment and medication, there are gaps between

treatment, and the record contains no clinical evidence to support Dr. De Jesus's assessment.  (Tr.

22).  Also, the state agency physicians' assessments are inconsistent with Dr. De Jesus's assessment

in that they opined that Rivera could occasionally lift and carry up to twenty pounds, frequently lift

and carry up to ten pounds, and sit, stand, and walk for six hours.  I find that the ALJ did consider

findings by the treating physician, and agree with the ALJ in that "the case record is devoid of

evidence to establish functional loss ... ." (Tr. 22).  Therefore, the ALJ's determination as to physical

RFC is supported by the record.

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                                      Page 15

### *Mental RFC/Dr. Beauchamp*

As to Dr. Beauchamp, Rivera specifically argues that the ALJ failed to take a longitudinal

approach in evaluating her mental illness and explain the weight given to this treating medical

source, as required by 20 C.F.R. § 404.1527(d)(2) and SSRs 85-16[8] and 96-2p.  (Docket No. 20, p.

2, 9, 25, 27-28).  Generally, ALJs should give "*more* weight to opinions from [a claimant's] treating

sources, since these sources are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of [a claimant's] medical impairment(s)."  20 C.F.R. § 404.1527(d)(2).  Under

the "good reasons" requirement of 20 C.F.R. § 404.1527(d)(2), "the notice of determination must

contain specific reasons for the weight given to the treating source's medical opinion, supported by

the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at 11-12.  "Medical opinions are statements from

physicians and psychologists or other acceptable medical sources that reflect judgments about the

nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what

you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §

404.1527(a)(2).

The ALJ found that Rivera suffered from severe recurrent major depression with psychotic

features, but retained the ability to perform unskilled work.  This case contains records from two

treating medical sources, Dr. Beauchamp and ASSMCA.  Both treated Rivera at around the same

time period.  While Dr. Beauchamp diagnosed her with severe recurrent major depressive disorder,

---

[8] This SSR states the policy for assessing an individual's RFC for mental impairments in order to
determine her capacity to engage in basic work-related activities.

ASSMCA medical staff found her disorder to be of moderate intensity.  Although Dr. Beauchamp

concluded that Rivera was unable to work, ASSMCA staff found her attention, concentration,

thought process and content, behavior, and judgment to be adequate.  Both sources provided

outpatient psychological treatment and prescribed medications.  In addition, Dr. Muñiz, who

performed a consultative evaluation, also found her to be moderately depressed, but alert,

cooperative, and oriented.

I find that the ALJ did not disregard the longitudinal view contained in Dr. Beauchamp's

medical record, as Rivera claims.  The decision contains a summary of the record of both treating

sources, a third paragraph with findings from the psychological evidence as a whole that Rivera's

conditions was not as severe as she alleged, and a fourth paragraph affording controlling weight to

the ASSMCA record.  Although Rivera is of the opinion that the ALJ should have afforded more

weight to Dr. Beauchamp's assessment, it was within the ALJ's discretion to credit the more positive

reports of claimant's mental condition.  *See* 20 C.F.R. § 404.1527(d)(2)-(5); Roman-Roman v.

Comm'r of Soc. Sec., 114 F. App'x 410, 412 (1st Cir. 2004), *citing* Rodríguez-Pagan, 819 F.2d at

2-3.   I find that the ALJ's discussion at pages 9 and 10 was sufficiently specific to make clear the

weight the ALJ gave to the treating physicians' medical opinions, and there is substantial evidence

on record to support the ALJ's findings and mental RFC determination.

### *RFC, Hypothetical Question, and Erosion of the Occupational Base*

Rivera argues that the ALJ failed to provide the VE a hypothetical question that included all

of her limitations, and failed to address how her severe non-exertional mental limitations (impaired

capacity for attention and concentration) that Dr. Beauchamp had assessed eroded her potential

occupational base, as per SSRs 85-15[9] and 96-9p.  (Docket No. 20, p. 2-4, 24-26, 29-30).

"If a vocational expert's testimony is to have any probative value, the hypothetical questions posed to the expert must contain the relevant facts." Padilla v. Barnhart, 186 Fed. Appx. 19, 21 (1st Cir. 2006).  In addition, "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or [her] representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand."  Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir.1994). However, it is well within an ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert.  *See* Arocho v. Sec'y of Health and Human Services, 670 F.2d 374, 375 (1st Cir. 1982) (ALJ must decide what testimony will be credited when forming the hypothetical questions).

The ALJ stated in the decision that a VE was used in order to determine whether Rivera's limitations eroded her unskilled light occupational base.  (Tr. 25).  The VE was asked whether a person with Rivera's profile, a maximum exertional level of light, and whose maximum mental capability is engaging in simple repetitive tasks that required no contact with public and only

---

[9] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."  SSR 85-15, 1985 SSR LEXIS 20 at 11.

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                     Page 18

occasional contact with supervisors and co-workers could perform Rivera's previous jobs.  This

hypothetical question includes the physical and mental RFC findings that I've already found to be

supported by the record, plus limitations to the basic mental demands of unskilled work as defined

in SSR 85-15, which Dr. Beauchamp had addressed when finding that Rivera was extremely limited

in sustaining concentration, interacting socially, and adapting to work settings, and that the ALJ had

considered in determining Rivera's mental RFC.  The VE answered that such a person would be able

to perform the sewing machine operator position, and other unskilled jobs found in the national

economy.  To be sure, Rivera's attorney had the opportunity to  ask the VE as to those extreme

limitations reported by Dr. Beauchamp, and the VE answered that such a person would not be able

to work any full-time job on a consistent basis, but it is the ALJ who decides what testimony to credit

in making disability findings.

Having already found that the medical evidence supports the ALJ's RFC determination, I find

that the questions posed by the ALJ to the VE accurately reflect Rivera's impairments and degree

of severity, and that the matter of erosion of the occupational base by additional mental limitations

was addressed by the ALJ.

## II.       Physical and Mental Demands of Past Relevant Occupations

Rivera next argues that the ALJ failed in making a finding of fact that contained a description

of the physical or mental demands of the claimant's past relevant work, of how Rivera performed

the work, or how it is customarily performed in the national economy, and the ALJ's determination

that she could perform past relevant work therefore did not comply with SSR 82-62.  (Docket No.

20, p. 6-7).  That ruling imposes a duty to obtain sufficient and adequate documentation of past work

demands in determining the claimant's ability to return to such past work:

Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.  In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.  SSR 82-62, 1982 SSR LEXIS 27 at 8-9.

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work."  Id. at 6-7.  Moreover, "[t]he ALJ is entitled to rely upon claimant's own description of the duties involved in her former job [citation omitted], as well as her own statements of her functional limitations."  Santiago, 944 F.2d at 5, *citing* 20 C.F.R. § 404.1545(a).

The record supports the ALJ's findings regarding the demands of Rivera's past work.  Rivera provided in a disability report and a work history report information as to the duties of each job.  The sewing machine operator was the longest she'd worked (from 1991 to 2002).  Her duties were to take work packs from carts, place them on her left side, open each one, sew the front part of the underwear, place them on her right side, and tie each pack when done sewing.  She would sit and reach objects for eight hours, and handle big and small objects for four hours.  She would lift up to twenty pounds, and frequently lift less than ten pounds.  She used machines/tools/equipment and technical knowledge/skills, and prepared reports.  She did not supervise people.  (Tr. 349-350, 360-364).  The VE informed the ALJ that the operator position was light and unskilled work, and that its Dictionary of Occupational Titles[10] ("DOT") code is 786.685-030.  (Tr. 40).  The ALJ's found

---

[10] "In making disability determinations, we rely primarily on the DOT ... for information about the requirements of work in the national economy.  We use these publications at steps 4 and 5 of the sequential evaluation process. ... Occupational evidence provided by a VE or VS should be consistent with the occupational information supplied by the DOT."  SSR 00-4p, 2000 SSR LEXIS 8 at 4.

that Rivera's "work experience included Cashier (DOT #211.462-010)(SVP 02), light unskilled type work; a hotel cleaner (DOT # 381.687-014)(SVP 02), heavy unskilled type work; and sewing machine operator (DOT # 786.684-030)(SVP 02) light, unskilled type work (Exhibit 1E)." (Tr. 24).

The ALJ referenced Exhibit 1E (Tr. 347-356), the disability report provided by Rivera, as the source of vocational documentation in determining the cited findings as to the demands of Rivera's previous jobs.  I find that the ALJ did obtain sufficient and adequate documentation as to the demands of Rivera's previous work as a sewing machine operator (provided by Rivera herself and through the DOT), as Rivera actually performed it and how it is generally performed in the national economy.

### III.    VE's Comparison of RFC with Demands of Past Employment

Finally, SSR 82-62 states that the decision as to whether the claimant retains the functional capacity to perform past work which has current relevance must be developed and explained fully in the disability decision.  SSR 82-62, 1982 SSR LEXIS 27 at 6-7.  The ALJ found that based on the testimony of the vocational expert, the preponderance of the evidence, and Rivera's RFC, she is not precluded from performing her past relevant work as sewing machine operator as it is actually and generally performed.  (Tr. 24).

The ALJ found that Rivera has the RFC to perform unskilled light work, but is limited by her non-exertional mental limitations to simple repetitive tasks, no contact with public and occasional contact with supervisors and co-workers.  The sewing machine operator position is light and unskilled type of work, as per the VE's testimony.  Rivera and the DOT provided a description of the sewing machine operator job and its general exertional and non-exertional requirements.  This job consists of performing repetitive or short-cycle work, requires no contact with public, and occasional contact with a supervisor.

**Rivera v. Commissioner of Social Security**
**Civil No. 12-1479 (BJM)**                                                          Page 21

   I find that the record contains sufficient documentation to support the ALJ's scarce findings of fact as to the physical and mental demands of her past job as sewing machine operator and as to her ability to perform it.  However, even if the ALJ failed to explain fully in the disability decision whether Rivera retained the functional capacity to perform past work, as required by SSR 82-62, the error in this case is harmless.  "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted).  Cause for remand exists when an ALJ's administrative failure to comply with a SSR causes prejudice. Delgado v. Barnhart, 305 F.Supp. 2d 704, 709 (S.D. Tex. 2004), *citing* Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) (reversing and remanding because prejudice resulted from the ALJ's failure to comply with an SSR).  The mental RFC limitations found by the ALJ are not inconsistent with performance of Rivera's past work as sewing machine operator as described by claimant herself.  I find that the ALJ's determination would have been the same even if the decision contained a more detailed finding of facts as to past relevant work.

### CONCLUSION

   For the foregoing reasons, the Commissioner's decision is affirmed. Judgment shall be entered accordingly.

   **IT IS SO ORDERED**.

   At San Juan, Puerto Rico, on this 3rd day of September, 2013.

           *s/Bruce J. McGiverin*
           BRUCE J. McGIVERIN
           United States Magistrate Judge